IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BOLTON PARTNERS INVESTMENT *
CONSULTING GROUP, INC.,

         *

  Plaintiff,

         *

  v.        Civil Action No.: RDB-05-2724

         *

THE TRAVELERS INDEMNITY
COMPANY OF AMERICA,  *

  Defendant.   *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

This action arises out of a comprehensive business insurance policy purchased by the

Plaintiff Bolton Partners Investment Consulting Group, Inc. ("Bolton Partners" or "Plaintiff")

from The Travelers Indemnity Company of America ("Travelers" or "Defendant").  Bolton

Partners alleges that Travelers breached its insurance contract when it failed to provide insurance

coverage and defend it in a Virginia lawsuit.  The three-count Complaint seeks damages for

breach of contract and breach of fiduciary duty and requests a declaratory judgment that the

insurance policy in question provided coverage to the Plaintiff and that the Defendant owed a

duty to defend the Plaintiff under the insurance policy.  Pending before this Court are the parties'

cross-motions for summary judgment.  The parties' submissions have been reviewed and no

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, the

Plaintiff's Motion for Partial Summary Judgment on Liability is DENIED, and the Defendant's

Motion for Summary Judgment is GRANTED.

BACKGROUND & PROCEDURAL HISTORY

On January 22, 2002, Bolton Offutt Donovan Inc. ("Bolton Offutt") purchased a

comprehensive insurance policy ("the Policy") from the Travelers Indemnity Company of America ("Travelers") for the year 2002, numbered 680-585H5250-TIA-02.  (*See* Pl.'s Mem. Supp. Summ. J. Ex. 2 [hereinafter "Policy"].)  At the time of the purchase, Bolton Offutt Donovan Investment Consulting Group, Inc., was a subsidiary of Bolton Offutt, offering investment consulting and actuarial review of benefit programs.  In September of 2002, Bolton Offutt Donovan, Inc., changed its name to Bolton Partners, Inc.  (*See* Def.'s Mem. Supp. Cross-Mot. Summ. J. Ex. E.)  At the same time, its wholly-owned subsidiary, Bolton Offutt Donovan Investment Consulting Group, Inc., changed its name to Bolton Partners Investment Consulting Group, Inc. ("Bolton Partners")—the Plaintiff in this case.  (*See id*. at Ex. F.)

The comprehensive insurance policy at issue in this case provided several forms of business coverage including, *inter alia*, Worker's Compensation, Business Auto, and Commercial General Liability coverage.  (*See* Policy at TR00106-TR00155.)  The Commercial General Liability coverage insured against personal injury "caused by an offense arising out of [the insured's] business" excluding advertising injuries which were covered separately by the Policy.  (*Id*. at TR00116.)  "Personal injury" included injury arising out of "[o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  (*Id*. at TR00118.)  While the Policy provided that Travelers had "the . . . duty to defend . . . against any 'suit' seeking [personal injury] damages," the Policy contained an exclusion for Designated Professional Services.  It is undisputed that in the Policy in question, the description of excluded professional services merely stated "Professional."  (*See id.* at  TR00116, TR00154.)

On November 13, 2002, Bolton Partners was sued in the Circuit Court for Prince William

County, Virginia, by the Variable Annuity Life Insurance Company, Inc., in a case captioned *The Variable Annuity Life Insurance Company, Inc. v. Bolton Partners Investment Consulting Group, Inc. (f/k/a Bolton Offutt Donovan Investment Consulting Group, Inc.) and Bradley Smith* ("the Lawsuit").  (*See* Pl.'s Mem. Supp. Summ. J. Ex. 1.)  The Lawsuit arose when Bolton Partners was retained by the Prince William County School Board ("the Board") to evaluate eleven companies' proposals to offer supplemental retirement plan services.  The Variable Annuity Life Insurance Company, Inc. ("Variable Annuity Life") had been providing annuity-based retirement services to the Board for approximately thirteen years and submitted one of the eleven proposals.  Bradley Smith, a principal at Bolton Partners, prepared a report recommending that the Board select a company that utilized mutual fund products rather than annuity products, in part because of annuities' higher fees and costs.  During a public hearing in September of 2002, Mr. Smith also allegedly accused Variable Annuity Life of improperly offering investment advice and not offering as many services to lower-income employees.  Based upon a report of Bolton Partners and its evaluation selecting a company offering mutual fund services, Variable Annuity Life lost its contract with the Prince William County School Board.  As a result, Variable Annuity Life sued Bolton Partners and its agent, Bradley Smith, for defamation, alleging that the contents of the report and Mr. Smith's statements at the hearing were misleading and false.

Bolton Partners notified Travelers of the pending Lawsuit on December 9, 2002, and requested confirmation that the suit was covered under the Policy.  On December 13, 2002, Travelers sent Bolton Partners a letter stating that it would not defend and/or indemnify it in the pending litigation.  (*See* Compl. Ex. 3.)  Travelers did not question that Bolton Partners was an

insured within the ambit of the Policy and further conceded that the claims brought by Variable
Annuity Life fell "within the definition of 'personal injury.'" (*Id*.)  However, Travelers
contended that the Designated Professional Services Exception "would preclude coverage in this
matter." (*Id*.)  As a result, Bolton Partners defended the Lawsuit at its own expense and the case
was ultimately settled..

Bolton Partners then filed this action against Travelers in the Circuit Court for Baltimore
City.  On September 30, 2005, Travelers removed the case to this Court pursuant to 28 U.S.C. §
1441 on the grounds that there is diversity of citizenship.[1]  The Complaint contains three counts:
Count I seeks damages for breach of contract; Count II seeks a declaratory judgment that the
Policy provided coverage and imposed on the Defendant a duty to defend Bolton Partners in the
underlying lawsuit; and Count III seeks damages for breach of fiduciary duty.  On March 27,
2006, Plaintiff filed a Motion for Partial Summary Judgment on Liability (Paper No. 31) alleging
that there are no genuine issues of material fact and that it is entitled to judgment as a matter of
law.  On May 5, 2006, Defendant filed a Cross Motion for Summary Judgment (Paper No. 35)
contending that Plaintiff was not an "insured" under the Policy and that the alleged defamation
underlying the Lawsuit fell within the Designated Professional Services Exception.

<u>STANDARD OF REVIEW AND APPLICABLE PRINCIPLES OF LAW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall
be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material*

---

[1] Bolton Partners is a Maryland corporation with its principal place of business in
Baltimore, Maryland,  while Travelers is a Connecticut corporation with its principal place of
business in Hartford, Connecticut.

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)

(emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court

explained that only "facts that might affect the outcome of the suit under the governing law" are

material.  *Id.* at 248.  Where, as here, both parties file motions for summary judgment, the court

applies the same standards of review.  *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th

Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court

is not permitted to resolve genuine issues of material fact on a motion for summary

judgment—even where . . . both parties have filed cross motions for summary judgment.")

(emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985).  The role of the court is to "rule on each

party's motion on an individual and separate basis, determining, in each case, whether a

judgment may be entered in accordance with the Rule 56 standard."  *Towne Mgmt. Corp. v.

Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

Resolution by summary judgment is appropriate under Maryland law where there is no

dispute as to the terms of an insurance contract but there is a dispute as to the legal meaning to

be accorded those terms.  *Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 939 (Md. Ct. Spec. App.

2000) (citations omitted).  Under Maryland law,[2] when deciding the issue of insurance coverage,

the "primary principle of construction is to apply the terms of the insurance contract itself."

*Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Ill.*, 66 F. Supp. 2d 681, 685 (D. Md.

1999).  An insurance policy is not necessarily to be construed most strongly against the insured

---

[2] Where, as here, this Court has jurisdiction based on diversity of citizenship, the substantive law of Maryland applies.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").

and the parties' intention "should be ascertained if reasonably possible from the policy as a

whole." *Id.* (quoting *Cheney v. Bell Nat'l Life*, 556 A.2d 1135, 1135 (Md. 1989)).

DISCUSSION

Both parties have moved for summary judgment.  Plaintiff Bolton Partners Investment

Consulting Group, Inc. ("Bolton Partners") alleges that it is entitled to a declaratory judgment

and damages because its insurer, Defendant Travelers Indemnity Co. of America ("Travelers"),

breached its duty to defend Bolton Partners in a lawsuit for defamation, in violation of the terms

of the insurance policy.  Defendant contends that it did not have a duty to defend Bolton

Partners, because Bolton Partners is not an "insured" under the terms of the contract and because

the Designated Professional Services Exception applied.

Under Maryland law, "when deciding the issue of coverage under an insurance policy,

the primary principle of construction is to apply the terms of the insurance contract itself."

*Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1031 (Md. 1993).  *See also Mundey*

*v. Erie Ins. Group*, 914 A.2d 1167 (Md. 2007) (quoting *Kendall v. Nationwide Ins. Co.*, 702

A.2d 767, 771 (Md. 1997)); *Warfield-Dorsey Co., Inc.,* 66 F. Supp. 2d at 685.  Words are given

"their usual, ordinary, and accepted meaning.  A word's ordinary signification is tested by what

meaning a reasonably prudent layperson would attach to the term."  *Bausch & Lomb, Inc.*, 625

A.2d at 1031.  "If the terms are ambiguous, . . . we will look to evidence from extrinsic sources

such as dictionaries or an interpretation of the term employed by one of the parties before the

dispute arose."  *Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 537 (Md. 2000).  Unlike many

jurisdictions,

> Maryland does not follow, as a matter of first resort, the view of
> construing an insurance policy most strongly against the insurer;

> however, if ambiguity is determined to remain after consideration of
> extrinsic evidence, 'it will ordinarily be resolved against the party
> who drafted the contract,' where no material evidentiary factual
> dispute exists.

*Clendenin Bros. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 394 (Md. 2006) (citations omitted).

Generally, "the parties' intention should be ascertained if reasonably possible from the policy as a whole." *Warfield-Dorsey Co., Inc.*, 66 F. Supp. 2d at 685 (citing *Cheney v. Bell Nat'l Life*, 556 A.2d 1135, 1135 (Md. 1989)). This Court will now apply these principles to the Policy at issue in addressing the parties' arguments.

## A.       Who Is an "Insured"

Defendant first argues that it had no duty to defend the Plaintiff because the Plaintiff was not an "insured" under the Policy. (Def.'s Mem. Supp. Cross-Mot. Summ. J. 10-14.) Specifically, Defendant argues that the Bolton Partners Investment Consulting Group, Inc. ("Bolton Partner") is a legally distinct entity from Bolton Offutt Donovan, Inc., and therefore was not covered. This argument is without merit.

It is undisputed that Bolton Offutt Donovan, Inc., was the "Named Insured" on the face of the Policy. (Policy at TR00052.) Furthermore, Bolton Offutt Donovan, Inc., was the parent corporation of Bolton Offutt Donovan Investment Consulting Group, Inc., which was the former name of the Plaintiff[3] at the time of the purchase and throughout 2002. As Plaintiff aptly notes, the Commercial General Liability package was part of a much broader "Office Pac" insurance

---

[3] As noted above, Bolton Offutt Donovan, Inc., and Bolton Offutt Donovan Investment Consulting Group, Inc., changed their names to Bolton Partners, Inc., and Bolton Partners Investment Consulting Group, Inc., respectively, in September of 2002, just before Bolton Partners was sued for defamation. For the purposes of this analysis, this Court will refer to Bolton Partners, the Plaintiff in this case, as the subsidiary of Bolton Offutt, the Named Insured under the Policy.

policy covering all employees of Bolton Offutt Donovan, Inc., including its subsidiary, Bolton Partners Investment Consulting Group, Inc.[4]  (*See id.* at 3.)  For example, the workers' compensation package covered "clerical and outside sales" employees working out of the 575 South Charles Street location—many of whom worked for Bolton Partners.  (*Id.* at 4 (citing Boykin Aff. Ex. A).)  In addition, the car used by Robert Bolton, Bolton Partners's President, for business purposes was specifically identified in the Policy's commercial automobile coverage. ((*Id.* at 5 (citing Boykin Aff. ¶ 6).)  Lastly, the Commercial Marine Inland coverage applied to 575 South Charles Street, Ste 500, which was occupied by both Bolton Offutt and Bolton Partners employees, as well as the computer equipment contained therein.  (*Id.* at 6 (citing Boykin Aff. Exs. B-C).)  Thus, the Office Pac as a whole clearly contemplates covering Bolton Partners as a subsidiary of Bolton Offutt.

Alternatively, Plaintiff contends that Defendant is precluded from asserting that it was not insured under the Policy because the argument had never been raised before this litigation. In the December 13, 2002, letter from Travelers refusing to defend Bolton Partners, Travelers did not raise any question with respect to Bolton Partners being an insured within the coverage of the Policy.  (*See* Pl.'s Mem. Supp. Summ. J. Ex. 4.)  Travelers had several other opportunities after sending Bolton Partners the letter denying coverage to raise this issue but failed to do so. For example, in the Producer Acknowledgment and Final Disposition forms prepared by

---

[4] Plaintiff notes that "[a]pproximately 11% of [Bolton Offutt Donovan, Inc.]'s workforce of fifty-four (54) was comprised of employees of . . . [Bolton Partners Investment Consulting Group, Inc.]"  (Pl.'s Mem. Opp'n Cross-Mot. Summ. J. 4.)  In addition, "[a]ll of Bolton Partners's employees worked out of offices located at 575 South Charles Street, Baltimore, Maryland," which is the address listed on the Policy beneath Bolton Offutt's name.  (*Id.* at 4 (citing Boykin Aff. ¶¶ 4-5).)

Travelers regarding the Lawsuit for which Bolton Partners had submitted a claim, Bolton Offutt

Donovan, Inc., is consistently referred to as the "Parent Company Name," "Account Holder,"

and "Client" and the Policy is consistently cited as precluding coverage based on the

Professional Services Exclusion.  (Taliano Aff. Exs. 1-2.)  In addition, in its answers to

Plaintiff's interrogatories, Defendant "did not identify the policy language on which it bases its

contention that Bolton Partners is not an insured."  (Pl.'s Mem. Opp'n Cross-Mot. Summ. J. 9.)

       The Maryland Court of Appeals has held that "in regard to at least certain types of

insurance policy provisions, 'the right of an insurer to forfeit or void the policy may be lost by

the doctrine of waiver or estoppel.'"  *St. Paul Fire & Marine Ins. Co. v. Molloy*, 433 A.2d 1135,

1138 (Md. 1981) (citing *Rubenstein v. Jefferson Nat'l Life*, 302 A.2d 49, 52 (Md. 1973)).  Under

the doctrine of estoppel, "[w]hen a party voluntarily so conducts himself that another party in

good faith relies upon his conduct, and is thereby put in a worse position, then the first party is

estopped from asserting rights which might otherwise exist to keep the second party from his

remedy."  *Travelers Indem. Co. v. Rosedale Passenger Lines, Inc.*, 450 F.2d 975, 977 n.2 (4th

Cir. 1971) (quoting *Price v. Adalman*, 37 A.2d 877, 879 (Md. 1944)); *see also Liberty Mut. Ins.

Co. v. Am. Auto. Ins. Co.*, 154 A.2d 826, 828 (Md. 1959).  Waiver, in the insurance context, is

defined in Maryland as "'the intentional relinquishment of a known right' existing for the benefit

of the insurer. . . ."  *St. Paul Fire & Marine Ins. Co.*, 433 A.2d at 1138 (citations omitted).  As

Plaintiff notes, the doctrine of waiver is based in part on the principle that, "an insurer is charged

with knowledge of facts which it knows or which with reasonable diligence by means of inquiry

or investigation it could have discovered.  It cannot, after the damage is done, take advantage of

its own inaction as a ground of defense."  *Medical Mut. Liability Ins. Soc. v. Miller*, 451 A.2d

930, 935 (Md. Ct. Spec. App. 1982).

In this case, Defendant was clearly aware that the Lawsuit was brought against Bolton Partners, rather than its parent corporation, and that Bolton Partners expected coverage under the Policy in question.  Defendant had ample time to notify Bolton Partners that the Policy did not apply to it but failed to do so until this litigation.  In addition, Bolton Partners in this case relied on the sole reason provided by the Defendant for denying coverage—the applicability of the Professional Services Exclusion—in preparing for this litigation.  Had Travelers notified Bolton Partners that it was not covered, Bolton Partners would also have had to make arrangements to purchase a separate comprehensive commercial insurance policy.  Thus, Travelers is estopped from arguing that Bolton Partners was not an "insured" under the Policy because it waived the defense.

In conclusion, for the foregoing reasons, the Plaintiff was clearly an "insured" under the Policy.

**B.     Duty to Defend**

The crux of all three Counts of the Complaint is that Travelers breached its duty to defend Bolton Partners in the underlying Lawsuit.  In *Brohawn v. Transamerica Insurance Co.*, 347 A.2d 842, 850 (Md. 1975), the Maryland Court of Appeals established the standard by which to analyze an insurer's duty to defend its insured.  In doing so, the *Brohawn* court articulated the so-called "potentiality rule," which provides generally that

> [t]he obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a

*potentiality* that the claim could be covered by the policy.

*Brohawn*, 347 A.2d at 850 (emphasis in original) (citations omitted).  The Court of Appeals

recently applied the potentiality rule, noting that "[i]f there is a possibility, even a remote one,

that the plaintiff's claims could be covered by the policy, there is a duty to defend."  *Clendenin*

*Bros.*, 889 A.2d at 392-393 (quoting *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 231, 695

A.2d 566, 572 (1997)).

In light of this general rule, recognized in the *Brohawn* opinion, the Court of Appeals has

established a two-part test to decide if an insurer owes a duty to defend:

> In determining whether a liability insurer has a duty to provide its
> insured with a defense in a tort suit, two types of questions ordinarily
> must be answered: (1) what is the coverage and what are the defenses
> under the terms and requirements of the insurance policy? (2) do the
> allegations in the tort action potentially bring the tort claim within the
> policy's coverage? The first question focuses upon the language and
> requirements of the policy, and the second question focuses upon the
> allegations of the tort suit.

*St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285 (Md. 1981).  Accordingly, this

Court addresses the cross-motions for summary judgment in the context of this two-part test.

### 1.      Terms of the Policy

The Policy provides that Travelers has "the right and duty to defend the insured against

any 'suit' seeking [personal injury] damages."  (Policy at TR00116.)  The Commercial General

Liability portion of the Policy in question covers personal injury "caused by an offense arising

out of [the insured's] business."  (*Id*.)  In addition to this broad statement of personal injury

coverage, the Policy expressly covers injury arising out of "[o]ral, written or electronic

publication of material that slanders or libels a person or organization or disparages a person's or

organization's goods, products or services."  (*Id*. at TR00118.)  The parties essentially do not

11

dispute that personal injury arising out of a defamatory statement would fall within the scope of the "personal injury" covered by the general provisions of the Policy. However, the Policy also contains an exclusion for Designated Professional Services ("the Exclusion"). (*See id.* at TR00154.) The Exclusion simply states that "this insurance does not apply to . . . 'personal injury' . . . due to the rendering or failure to render any professional service." (*Id.*)

By juxtaposing the Exclusion provision with the provisions defining the scope of personal injury coverage, the logical conclusion is that a defamatory statement made during the rendering of a professional service would *not* be covered by the Policy. Plaintiff contends that the Exclusion is ambiguous because it does not specifically delineate which services are excluded and that, therefore, it should be construed against the Defendant as drafter of the contract. (Pl.'s Mem. Opp'n Cross-Mot. Summ. J. 18-26.) However, this Court has previously recognized that "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer." *Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Ill.*, 66 F. Supp. 2d 681, 685 (D. Md. 1999) (citing *Cheney,* 556 A.2d at 1135).

Furthermore, "[c]ourts that have construed professional liability exclusion clauses . . . have adopted an expansive definition of the term 'professional service.'" *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1343 (7th Cir. 1995) (quoting *State Street Bank & Trust v. INA Ins. Co.*, 567 N.E.2d 42, 47 (1991)) (internal quotation marks omitted). The term "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature." In determining whether an action is a "professional service," the

courts "look not to the title or character of the party performing the act, but to the act itself." *Utica Mutual Ins. Co. v. Miller*, 746 A.2d 935, 943 (Md. 2000) (quoting *Bank of Cal., N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)) (internal quotation marks omitted).

In this case, Bolton Partners is "an independent actuarial, benefits and investment consulting firm."  (Compl. ¶ 1.)  The very nature of its professional services involves critical analysis of existing and proposed benefits programs.  Therefore, the rendering of professional services by Bolton Partners inevitably results in some third parties being pleased or offended by its analysis.  As it is clear that the Professional Services Exclusion precludes coverage for personal injury arising out of the majority of Plaintiff's work, this Court must now examine the facts of the underlying Lawsuit to determine whether the particular services at issue fit within the scope of the Exclusion.

## 2.      Underlying Tort Action

The Lawsuit brought against Bolton Partners sought damages for defamation as a result of Bolton Partners's professional analysis.  Bolton Partners had been retained by the Prince William County School Board ("the Board") as a consultant to advise the Board on possible retirement investment plans.  Bradley Smith, a principal of Bolton Partners, prepared a report evaluating eleven proposed plans submitted by the various companies, including Variable Annuity Life Insurance Company, Inc. ("Variable Annuity Life").  Mr. Smith concluded in his report that annuity-based retirement plans were more costly and less desirable than mutual fund-based plans.  He also allegedly made statements at a public hearing held by the Board that Variable Annuity Life in particular had been charging hidden fees and was possibly engaging in questionable investment practices.  The Board ultimately selected a proposal incorporating

13

mutual funds.  Variable Annuity Life brought suit against Bolton Partners and Mr. Smith for defamation.

The facts of this case and the underlying Lawsuit are analogous to two cases cited by the Defendant.  In *Erie Insurance Group v. Alliance Environmental, Inc*., 921 F. Supp. 537 (S. D. Ind. 1996), a high school hired Sear Corporation ("Sear") to remove asbestos from the school. Subsequently, asbestos was discovered in the school, and the school board hired Alliance Environmental, Inc. ("AEI") to conduct an investigation.  *Id.* at 540.  AEI reported to the school, as well as to the Indiana Department of Environmental Management, that Sear acted negligently and in violation of civil and criminal laws by failing to remove all the asbestos.  *Id.*  Sear temporarily lost its license as an asbestos contractor within Indiana and was sued by the high school as a result of AEI's report.  *Id.*  Sear then sued AEI for defamation, among other claims. *Id.*  AEI's insurance provider, Erie Insurance Group ("Erie"), refused to defend AEI on the basis of a professional services exclusion similar to that in this case.  *Id.*  Erie sought a declaratory judgment that it did not have a duty to defend AEI.  *Id.*  In that case, AEI raised the identical argument as that raised by Bolton Partners in this case, *to wit*: the professional services exclusion did not apply because the allegedly defamatory statements were "outside the scope of [AEI's] contractual obligations to the school corporation."  The court held that AEI made the statements "in the course of providing his professional services for the school corporation, at least in the sense that he would not have made them but for the contract with the school corporation to inspect and report on the work done by [Sear]."  *Id.* at 546.  As in the case at bar before this Court, the statements made were necessarily in the context of rendering professional services.

To similar effect is the opinion of the United States Court of Appeals for the Seventh

Circuit in *Hurst-Rosche Engineers, Inc. v. Commercial Union Insurance Co.*, 51 F.3d 1336 (7th Cir. 1995).  In that case, an Illinois housing authority hired Hurst-Rosche Engineers, Inc. ("Hurst-Rosche"), an engineering firm, to inspect the construction work performed by the housing authority's general contractor, Quality Granite Construction Co. ("Quality Granite"). Hurst-Rosche found that Quality Granite was not performing at an acceptable level and it sent a letter indicating this conclusion to the insurer of Quality Granite's performance bond.  *Id.* at 1339.  Quality Granite sued Hurst-Rosche for libel and tortious interference with contract.  *Id.* Hurst-Rosche's insurance company, Commercial Union Insurance Co. ("Commercial"), denied coverage under the policy's professional services exclusion, and Hurst-Rosche filed suit against its insurer as a result.  *Id.*  The Seventh Circuit affirmed the granting of summary judgment by the district court in favor of the insurer.  *Id.* at 1346.  The court concluded that Commercial did not owe Hurst-Rosche a duty to defend it, because "Quality Granite's claims against Hurst-Rosche . . . arose from [its employee's] rendering of his professional opinion with respect to Quality Granite's performance on the . . . construction project."  *Id.* at 1343.

Like AEI in the *Erie* case and Hurst-Rosche in the *Hurst-Rosche* case, Bolton Partners was hired to evaluate the proposed retirement plans of several companies, including Variable Annuity Life.  This necessarily involved critical analysis which may result in a third party's loss of a business opportunity.  Any allegedly defamatory opinions of Variable Annuity Life and its proposed plan rendered by Mr. Smith of Bolton Partners were in the context of his professional analysis of those retirement plans.  This type of analysis was necessary in the performance of Bolton Partners' contract with the Prince William County School Board.  It is therefore clear to this Court that such services fit within the scope of the Professional Services Exclusion.

Therefore, Variable Annuity Life's lawsuit was outside the scope of the Policy's coverage.

Accordingly, the Professional Services Exclusion in this case precluded coverage, and the Defendant Travelers did not owe Bolton Partners a duty to defend it in the underlying Lawsuit.  As a matter of law, there are no genuine issues of material fact as to Plaintiff's declaratory judgment, breach of contract, or breach of fiduciary duty claims, and the Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant's Cross-Motion for Summary Judgment is GRANTED.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Bolton Partners Investment Consulting Group, Inc.'s Motion for Partial Summary Judgment on Liability is DENIED, and Defendant Travelers Indemnity Company of America's Cross-Motion for Summary Judgment is GRANTED.  An Order and Judgment will be filed separately.

/s/_____
Richard D. Bennett
United States District Judge

Date:  March 15, 2007